Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000087
09-JUN-2017
07:58 AM

NO. CAAP-16-0000087

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MATTHEW K. HAILI, also known as
Matthew K.Haili, Jr., Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 15-1-2040)


SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Matthew K. Haili (**Haili**) appeals from the Judgment of Conviction and Sentence (**Judgment**) filed January 22, 2016, in the Family Court of the First Circuit (**Family Court**).[1] Following a jury trial, Haili was convicted of Abuse of Family or Household Members, in violation of Hawaii Revised Statutes (**HRS**) § 709-906 (Supp. 2016)[2] (Count 1), and Assault in the Third Degree, in violation of HRS § 707-712

---

[1] The Honorable Jeffrey P. Crabtree presided.

[2] HRS § 709-906 provides in relevant part:

**§ 709-906 Abuse of family or household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4).

(2014)[3] (Count 2). Haili was sentenced to two concurrent two-year terms of probation, and two concurrent ninety day terms of imprisonment.

Haili raises three points of error on appeal, contending that: (1) the Family Court erred when it failed to instruct the jury on the defense of use of force for the protection of property (**Protection of Property**); (2) the State presented insufficient evidence to convict him of Abuse of Family or Household Members and Assault in the Third Degree; and (3) the Deputy Prosecuting Attorney's (**DPA's**) comments during closing argument constituted prosecutorial misconduct.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Haili's points of error as follows:

(1) At trial, Haili's counsel did not request a proposed instruction on the Protection of Property defense, and did not object to the omission of the defense in the court's jury instructions. The supreme court has recognized that:

> although as a general matter forfeited assignments of error are to be reviewed under HRPP Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged

---

[3]    HRS § 707-712 provides:

> **§ 707-712 Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:
> (a)    Intentionally, knowingly, or recklessly causes bodily injury to another person; or
> (b)    Negligently causes bodily injury to another person with a dangerous instrument.
> (2)    Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.*, that the erroneous jury instruction was not harmless beyond a reasonable doubt.

State v. Nichols, 111 Hawai'i 327, 337, 141 P.3d 974, 984 (2006) (footnote omitted).

The supreme court clarified that, under Nichols, the "defendant must first overcome the presumption that the instructions as given were correct." State v. Taylor, 130 Hawai'i 196, 204, 307 P.3d 1142, 1150 (2013) (citing Nichols, 111 Hawai'i at 337 n.6, 141 P.3d at 984 n.6). The appellate court "will apply the plain error standard of review to correct errors [that] seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." State v. Kikuta, 125 Hawai'i 78, 95, 253 P.3d 639, 656 (2011) (quoting Nichols, 111 Hawai'i at 334, 141 P.3d at 981). "Once instructional error is demonstrated, the defendant must then show that there was a reasonable possibility that the erroneous jury instruction contributed to his or her conviction, *i.e.*, that the instructional error was not harmless beyond a reasonable doubt." Taylor, 130 Hawai'i at 204, 307 P.3d at 1150 (citing Nichols, 111 Hawai'i at 337, 141 P.3d at 984).

With regard to unrequested jury instructions raised for the first time on appeal:

HRS § 701-115(2) [(2014)[4]] and its accompanying Commentary place the burden of production on the defendant to present evidence of the specified fact or facts going to the defense. In other words, the defendant must have come forward at trial with credible evidence of facts constituting the defense, unless those facts were supplied by the prosecution's witnesses. Further, "credible evidence" in this context means that the circuit court should have concluded, based on the record that existed at trial, that the evidence "offered reasonable grounds for being believed," i.e., that "a reasonable juror could harbor a reasonable doubt" as to the defendant's guilt, and should have given the unrequested . . . jury instruction. Failure to give the . . . jury instruction under these circumstances constitutes plain error.

Id. at 207, 307 P.3d at 1153 (footnote omitted).

Haili was charged with Abuse of Family or Household Members in violation of HRS § 709-906, which states in relevant part "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]" Protection of Property is a defense to an Abuse of Family or Household Members charge. HRS § 703-301(1) (2014).[5] HRS § 703-306 (2014) states the Protection of Property defense, in relevant part, as follows:

§ 703-306 Use of Force for the protection of property.
(1) The use of force upon or toward the person of another is

---

[4] HRS § 701-115 provides in relevant part:

§ 701-115 Defenses. (1) A defense is a fact or set of facts which negatives penal liability.
(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:
(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt; or
(b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.

[5] HRS § 703-301(1) provides that in "any prosecution for an offense, justification, as defined in sections 703-302 through 703-309, is a defense."

justifiable when the actor believes that such force is immediately necessary:

. . . .

(c) To prevent theft, criminal mischief, or any trespassory taking of tangible, movable property in the actor's possession or in the possession of another person for whose protection the actor acts.

(2) The actor may in the circumstances specified in subsection (1) use such force as the actor believes is necessary to protect the threatened property, provided that the actor first requests the person against whom force is used to desist from the person's interference with the property, unless the actor believes that:

(a) Such a request would be useless;

(b) It would be dangerous to the actor or another person to make the request; or

(c) Substantial harm would be done to the physical condition of the property which is sought to be protected before the request could effectively be made.

The Family Court's failure to provide an instruction on the Protection of Property defense would constitute plain error if Haili presented credible evidence of facts constituting the defense, or if such facts were provided by the prosecution's witnesses. See Taylor, 130 Hawaiʻi at 207, 307 P.3d at 1153. At trial, Haili testified that he reached for the candy that complaining witness (CW1) had thrown at him and "flicked it" at CW1. Haili said that he then heard CW1 state that he had hit her with the keys. Haili testified that he did not know the keys were in his hand. Haili stated that he then "struggled with [CW1] to get the keys out of her hand." When asked why he wanted the keys, Haili stated that the "keys was to the pod where [his] personal belongings were. Before [CW1] had taken the keys from [him] and had not returned them for several days, not enabling [him] to get [his] tools or clothes from the pod."

On appeal, Haili argues that the "jury could have believed that [he] was trying to prevent [CW1] from committing a theft, criminal mischief, or a trespassory taking of his keys." However, Haili's testimony does not suggest that CW1 was about to commit a theft or any trespassory taking of Haili's keys on November 7, 2015 and there is no evidence in the record that CW1 was about to commit property damage on November 7, 2015. Thus, Haili did not present credible evidence that his use of force was immediately necessary to prevent theft, criminal mischief, or any trespassory taking of tangible, movable property in the actor's possession. See HRS § 703-306. Furthermore, the Protection of Property Defense requires, subject to certain exceptions, that "the actor first requests the person against whom force is used to desist from the person's interference with the property[.]" HRS § 703-306(2). There is no support in the record to suggest that Haili requested that CW1 return the keys, or that Haili believed that such a request would be "useless, dangerous to [Haili], or likely to give [CW1] time to do substantial harm to the physical condition of the property." See Commentary to HRS § 703-306.

Based on the foregoing, we cannot conclude that Haili adduced credible evidence that would support a Protection of Property defense. See Taylor, 130 Hawai'i at 207, 307 P.3d at 1153. Therefore, we reject Haili's argument that the Family Court erred when it failed to sua sponte provide an instruction on the Protection of Property defense.

(2)(a) <u>Abuse of Family or Household Member.</u> Haili argues that there was no substantial evidence that he "intentionally, knowingly, or recklessly physically abuse[d] [CW1] by throwing the keys at her;" rather, he only acted negligently because he did not "realize that he had the keys in his hand when he tried to flick the candy back at [CW1.]"

"[A]n appellate court will not overturn a conviction by a jury if viewing the evidence in the light most favorable to the prosecution, there is substantial evidence to support the conclusion of the trier of fact." <u>State v. Matavale</u>, 115 Hawai'i 149, 158, 166 P.3d 322, 331 (2007) (citation, brackets and internal quotation marks omitted). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." <u>Id.</u> at 157-58, 166 P.3d at 330-31 (citation omitted). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." <u>Id.</u> at 158, 166 P.3d at 331 (citation and brackets omitted). Furthermore, "appellate courts will give due deference to the right of the trier of fact 'to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced.'" <u>State v. Agard</u>, 113 Hawai'i 321, 324, 151 P.3d 802, 805 (2007) (citation omitted).

In addition, the supreme court has recognized that "[g]iven the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof of circumstantial

evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient." State v. Eastman, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996) (citation omitted).

Here, the State was required to present substantial evidence that Haili abused a family or household member. See HRS § 709-906. "When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702-204 (2014); see HRS § 702-206 (2014). Family or household members includes "persons in a dating relationship as defined under section 586-1 . . . and persons jointly residing or formerly residing in the same dwelling unit[.]" HRS § 709-906. The term physical abuse means to "maltreat in such a manner as to cause injury, hurt, or damage to that person's body." State v. Nomura, 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App. 1995).

At trial, CW1 testified that on November 7, 2015, she and Haili shared a bedroom in a three-bedroom house in Kalihi. CW1 described her relationship with Haili as romantic and intimate. CW1 testified about several acts of physical abuse committed by Haili on November 7, 2015. CW1 testified that Haili "hurled" a set of keys at her. The keys struck CW1's temple, and almost hit her in the eye. CW1 stated that after she picked up the keys, Haili lunged at her, "grabbed [her] hand and was twisting and turning, trying to pull the keys off [her] hand." At the same time, Haili "reached across [CW1's] body . . . put

his hands over [her] face and over [her] eyeglasses and started squeezing and pushing them around on [her] face as if to break them right on [her] face." CW1 testified that Haili was also stepping on her foot which "had a bad bruise on it[.]" The second complaining witness (CW2), a friend of CW1 who was also staying at the home, testified that CW1 had a lump on her head, and cuts on her head and hand. Additionally, CW2 related that CW1's eye was black and blue.

Based on this testimony, and photographs admitted into evidence depicting injuries to CW1's head and left hand, the jury could reasonably infer that Haili intentionally, knowingly or recklessly maltreated CW1 "in such a manner as to cause injury, hurt, or damage[.]" Nomura, 79 Hawaiʻi at 416, 903 P.2d at 721. Viewing the evidence in the light most favorable to the State, with the fact-finder determining credibility, we conclude that there was substantial evidence to support Haili's conviction for Abuse of Family or Household Members.

Haili also argues that there "was no substantial evidence that the State proved beyond a reasonable doubt that Haili's use of force in taking his keys from [CW1's] hand was not justified as the use of force for protection of property." However, as previously discussed, there was no credible evidence of facts constituting this defense and no instruction concerning this defense was requested or presented to the jury. Thus, we conclude that Haili's argument is without merit.

Haili further argues "[a]s there was no substantial evidence that the State proved beyond a reasonable doubt that

Haili's use of force was not justified for self-protection, his conviction ... could not be based on any use of force against [CW1.]" Under HRS § 703-304(1) (2014), the "use of force upon or toward another is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion." "Force" is defined as "any bodily impact, restraint, or confinement, or the threat thereof." HRS § 703-300 (2014).

Here, CW1 testified that, after she tossed candy at Haili when he told her she could not eat it, Haili "hurled" a set of keys at her. The keys struck CW1's temple, and almost hit her in the eye. CW1 stated that after she picked up the keys, Haili lunged at her, "grabbed [her] hand and was twisting and turning, trying to pull the keys off [her] hand." At the same time, Haili "reached across [CW1's] body . . . put his hands over [her] face and over [her] eyeglasses and started squeezing and pushing them around on [her] face as if to break them right on [her] face." CW1 related that Haili pushed against her glasses with his left hand, and grabbed the keys with his right hand. CW1 testified that Haili was also stepping on her foot which "had a bad bruise on it[.]" After several minutes of "yelling and being tossed around," CW1 testified that she bit Haili in self-defense. After CW1 bit Haili's shoulder, Haili continued to push on her face and grapple with her hand. Viewing the evidence in the light most favorable to the State, we conclude that sufficient evidence was

presented to enable a reasonable person to conclude that Haili's actions were not justified by self-defense.

(2)(b) <u>Assault in the Third Degree</u> Haili argues that his conviction for Assault in the Third Degree must be reversed because there was no substantial evidence that the State proved beyond a reasonable doubt that Haili's use of force against CW2 was not justified for self-protection. The "use of force upon or toward another is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion." HRS § 703-304(1).

CW2 testified that after she heard CW1 scream, CW2 ran into the house. As CW2 stood in front of Haili and CW1's bedroom, Haili approached her and "[tried] to antagonize [her] to hit him." CW2 stated that "[Haili] kept telling me that I needed to get a baseball bat, that I should hit him and spit on him. And he approached me until he was so close to me that if I moved any which way, I would touch him." CW2 testified that Haili "grabbed [her] by both arms and . . . was trying to push [her] because [she] was trying to back away from him." After CW2 told Haili that she was not afraid of him, Haili "got really angry and . . . . head-butted [CW2.]" CW1 also testified that after Haili left the bedroom, he walked towards CW2 and yelled, "Hit me, hit me, I know you want to hit me" in a loud and antagonistic voice. CW1 related that Haili was "standing very close and he stood up tall and kind of leaned over [CW2.]" CW1 also related that CW2 "was trying not to have contact," and looked like she "did not

want to be antagonized into any sort of confrontation." CW2 testified that Haili head-butted her in the head three times and once in the chest. In his testimony, Haili admitted head-butting CW2 three times, but related that he was trying to get out of the bedroom door and was trying to defend himself. Viewing the evidence in the light most favorable to the State, we conclude that sufficient evidence was presented to enable a reasonable person to conclude that Haili's actions were not justified by self-defense.

(3) Haili argues that the DPA committed prosecutorial misconduct during closing argument when he (1) personally vouched for CW2's credibility, and (2) impermissibly appealed to the jurors' emotions. Haili asserts that the DPA's misconduct, individually or cumulatively, necessitates a vacatur of his convictions. Haili did not object to the challenged statements during the DPA's closing argument. Thus, this court must first determine whether the DPA's statements were improper and if so, whether they constituted plain error that impacted Haili's substantial rights. State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996); see also Hawaii Rules of Penal Procedure (HRPP) Rule 52(b).

Prosecutors must refrain from "expressing their personal views as to a defendant's guilt or credibility of witnesses." Clark, 83 Hawai'i at 304, 926 P.2d at 209. "The rationale for the rule is that 'expressions of personal opinion by the prosecutor are a form of unsworn unchecked testimony and tend to exploit the influence of the prosecutor's office and

undermine the objective detachment that should separate a lawyer from the cause being argued.'" State v. Marsh, 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986) (citation and brackets omitted). However, a "prosecutor, during closing argument, is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence." Clark, 83 Hawai'i at 304, 926 P.2d at 209. "[C]losing argument affords the prosecution (as well as the defense) the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom." State v. Klinge, 92 Hawai'i 577, 592, 994 P.2d 509, 524 (2000) (citation omitted). Thus, a "prosecutor is permitted to argue, based on his or her analysis of the evidence, the credibility of a witness." State v. Jhun, No. CAAP-15-0000432, 2016 WL 3511156 at *3 (Haw. App. June 21, 2016) (SDO) (citing Marsh, 68 Haw. at 660, 728 P.2d at 1302).

Here, the DPA stated during closing argument:

> Now, when [CW2] testified there is no doubt that what she was saying to you was truth and that she believed every word that she shared with you. She tried to be strong up there but there were times you could see the pain coming through, when she was trying to fight back the tears caused by her remembering the trauma that [Haili] put her through.
>
> And you cannot feel that kind of pain and express that kind of emotion unless you actually lived through it and suffered through it. So when you see those tears, when you hear the fear in her voice, that is proof that what she's telling you is the truth. Those honest emotions are evidence of her truthfulness.
>
> . . . .
>
> [CW2] testified credibly that she didn't want to put up a fight, that she kept her arms to her side even though [Haili] was telling her hit me, hit me, go get a bat, hit me.
>
> . . . .

Now, [CW2] then testified that she tried to resist. And out of frustration, what does [Haili] do? Because [CW2] is not responding, he strikes. He head-butts her three times in the head and one time in the chest. Okay. That's what [CW2] told you and that's what she told you credibly and with confidence in her voice.

Now, her testimony is supported not only by the truthfulness in her voice but by the evidence. Look at State's Exhibit 15. That was caused by [Haili], that is proof that he assaulted her, okay, it's proof of pain, it's proof positive. Also consider the testimony of Officer Wagner. He also said that he saw a cut on her. Okay. That's proof again of this head-butt.

. . . .

Okay. So even [Haili's] testimony corroborates [CW2's] testimony. So there's no question what she's saying is true and there's no question what happened here is that she was assaulted.

. . . .

So when you look at what [CW2] said, testified to, the truthfulness in her voice and the corroborating evidence, there's no question that he assaulted her and it's not in self-defense.

The pivotal issue at trial was the credibility of the witnesses. The State's theory of the case was that CW1 and CW2 were "telling . . . the truth" and that Haili's version of events was "improbable." Thus, the DPA's arguments about CW2's credibility during closing argument reinforced the State's theory of the case that, "based on the observation of [CW2] and the content of [her] testimony," CW2 was a credible witness. Jhun, 2016 WL 3511156 at *4. Based on the foregoing, this court declines to interpret the DPA's statements as an expression of his personal evaluation of CW2's credibility. Compare Marsh, 68 Haw. at 660-61, 728 P.2d at 1302 (holding that the DPA improperly expressed her personal opinion when she stated "I feel it is very clear and I hope you are convinced, too, that the person who committed this crime was none other than Christina Marsh[,]"

14

"[y]ou should entirely disregard [the defendant's alibi witnesses'] testimony because, if you will remember, every one of them lied on the stand. . . . I sincerely doubt if [one of the alibi witness] had seen Christina Marsh there" and "I find that awfully hard to believe" (ellipsis in original)).

Haili also argues that the DPA impermissibly appealed to the jurors' emotions when he stated "[CW2] tried to be strong up there, but there were times you could see the pain coming through, when she was trying to fight back the tears caused by her remembering the trauma that the defendant put her through," "you cannot feel that kind of pain and express that kind of emotion unless you actually lived through it and suffered through it," and "what [Haili] did was sadistic," citing State v. Rogan, 91 Hawai'i 405, 409, 984 P.2d 1231, 1235 (1999).

This court considers the DPA's remarks in context of the closing argument as a whole. The DPA stated during closing argument:

> [Statement 1] Now, when [CW2] testified there is no doubt that what she was saying to you was truth and that she believed every word that she shared with you. She tried to be strong up there but there were times you could see the pain coming through, when she was trying to fight back the tears caused by her remembering the trauma that [Haili] put her through.

> [Statement 2] And you cannot feel that kind of pain and express that kind of emotion unless you actually lived through it and suffered through it. So when you see those tears, when you hear the fear in her voice, that is proof that what she's telling you is the truth. Those honest emotions are evidence of her truthfulness.

> . . . .

> [Haili] was not acting in self-defense. He was being a bully, he was trying to intimidate [CW2.] [Statement 3] And what he did was sadistic; he wanted to hurt her.

(Underlining added).

Haili did not object to any of the challenged statements during the DPA's closing argument. As such, this court must determine whether the DPA's statements constituted plain error that impacted Haili's substantial rights. Clark, 83 Hawai'i at 304, 926 P.2d at 209. Unlike the remarks held improper in Rogan and other cases, Statements 1 and 2 did not address Haili or CW2's race or "status." Rogan, 91 Hawai'i at 412, 984 P.2d at 1238. Viewed in context, and considering the closing argument in its entirety, Statements 1 and 2 highlighted the factors that the jury had been given to determine credibility of the witnesses,[6] and reinforced the State's theory of the case, i.e., based on the evidence and manner of their testimony, CW1 and CW2 were telling the truth about the incident. In light of the latitude afforded to the State in discussing evidence, and that closing argument provides the State with the opportunity to persuade the jury that its theory of the case is valid, based

---

[6]     The Family Court provided the following instruction to the jury:

> It is your exclusive right to determine whether and to what extent a witness should be believed and to give weight to his or her testimony accordingly. In evaluating the weight and credibility of a witness's testimony, you may consider the witness's appearance and demeanor; the witness's manner of testifying; the witness's intelligence; the witness's candor or frankness, or lack thereof; the witness's interest, if any, in the result of this case; the witness's relation, if any, to party; the witness's temper, feeling, or bias, if any has been shown; the witness's means and opportunity of acquiring information; the probability or improbability of the witness's testimony; the extent to which the witness is supported or contradicted by other evidence; the extent to which the witness has made contradictory statements, whether in trial or at other times; and all other circumstances surrounding the witness and bearing upon his or her credibility. . . .

(Emphases added.)

upon the evidence adduced and all reasonable inferences that can be drawn therefrom, we conclude that Statements 1 and 2 were not improper.  See Klinge, 92 Hawai'i at 592, 994 P.2d at 524. Similarly, the third challenged statement referred to the DPA's argument that Haili did not act in self-defense and though colorfully stated, in this context, was not improper.

For these reasons, the Family Court's January 22, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, June 9, 2017.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Brandon H. Ito,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge